ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| VALERIA SOFÍA SAN INOCENCIO RODRÍGUEZ<br><br>Apelada<br><br>V.<br><br>MUNICIPIO DE SAN JUAN<br><br>Apelante | TA2026AP00186 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV03530<br><br>Sobre:<br>Caída |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 16 de abril de 2026.

Comparece MAPFRE PRAICO Insurance Company (en adelante, MAPFRE o apelante), como aseguradora del Municipio Autónomo de San Juan (en adelante, Municipio), y solicita la revisión de una *Sentencia Parcial* emitida el 23 de diciembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] En este dictamen, el foro primario declaró Ha Lugar la solicitud de desestimación presentada por el Municipio y No Ha Lugar la solicitud de desestimación presentada su aseguradora, MAPFRE.

Por los fundamentos que se exponen a continuación, modificamos la *Sentencia Parcial* apelada, a fines de desestimar la demanda en cuanto a la apelante.

## I.

Este caso tuvo su génesis el 24 de abril de 2025, cuando la Sra. Valeria Sofía San Inocencio Rodríguez (en adelante, señora San Inocencio Rodríguez o apelada) presentó una *Demanda* por daños y perjuicios contra el Municipio, MAPFRE, el Estado Libre Asociado de

---

[1] Entrada Núm. 26 del expediente del caso SJ2025CV03530 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Notificada ese mismo día.

Puerto Rico (ELA) y otros.[2] En esta, alegó que el 29 de abril de 2024, sufrió una caída cuando su pie izquierdo quedó atrapado en un hueco en la acera frente al Edificio 1257, cerca del VIG Tower, en la Avenida Ponce de León, en Santurce (PR-25), lo que le ocasionó una serie de daños que requirieron tratamiento médico. Arguyó que el Municipio y los codemandados eran responsables solidariamente por negligencia al crear y/o conocer la existencia del hueco e incumplir con su deber de mantener el acceso seguro y libre de riesgos, por lo que solicitó indemnización por los daños sufridos.

Luego de varios incidentes procesales, el 20 de octubre de 2025, el Municipio presentó una *Solicitud de Desestimación y/o Sentencia Sumaria.*[3] En esta, planteó que el incidente ocurrió en una acera que es parte de una servidumbre de paso del Departamento de Transportación y Obras Públicas (DTOP) y del ELA, conforme acreditó mediante Certificaciones expedidas el 24 de julio de 2024, el 12 de julio de 2024 y el 9 de septiembre de 2024, por la secretaria municipal. Además, indicó que le amparaba la inmunidad otorgada por virtud del Artículo 1.053(g) del Código Municipal, 21 LPRA sec. 7084, respecto a las causas de acción de daños y perjuicios por accidentes que ocurrían en carreteras estatales, incluyendo las aceras. Asimismo, expresó que, de conformidad con lo dispuesto en el caso *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023), el Municipio tiene inmunidad ante la acción presentada por la apelada por daños y perjuicios, ya que la caída o accidente ocurrió en una carretera o acera estatal. Ante ello, sostuvo que no se justificaba la concesión de un remedio en su contra.

MAPFRE arguyó que, al no configurarse responsabilidad del Municipio por razón de su inmunidad total respecto a los accidentes en las carreteras o aceras estatales, el contrato de seguros no podía

---

[2] *Íd.*, Entrada Núm. 1 en SUMAC.
[3] *Íd.*, Entrada Núm. 11 en SUMAC.

extenderse para cubrir una responsabilidad que su asegurado no tenía. Al respecto, indicó que dicha inmunidad se extendía a la compañía aseguradora del Municipio, por lo que no estaba obligada a responderle a la señora San Inocencio Rodríguez.

Por su parte, el 22 de diciembre de 2025, la señora San Inocencio Rodríguez presentó una *Moción Enmendada en Cumplimiento de Orden en Oposición a Solicitud de Desestimación y/o Sentencia Sumaria.*[4] Entre otros, señaló que el Municipio ejercía jurisdicción, control y mantenimiento sobre la acera de la PR-25 donde ocurrió la alegada caída, y que esta no es una carretera estatal. A base de lo cual sostuvo que al Municipio no le era aplicable la inmunidad proveniente del Artículo 1.053(g) del Código Municipal, *supra,* sec. 7084. En cuanto a MAPFRE, adujo que las aseguradoras no podían invocar las defensas reconocidas tanto al ELA como a sus municipios. En consecuencia, arguyó que la inmunidad que pretendía invocar el Municipio, no se extendía a MAPFRE. Por lo cual, concluyó no procedía la solicitud del apelante.

Tras evaluar los planteamientos de las partes, el 23 de diciembre de 2025, el foro primario emitió una *Sentencia Parcial* en la que declaró Ha Lugar la solicitud de desestimación del Municipio y desestimó la *Demanda* en su contra al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.[5] No obstante, determinó que la inmunidad no era extensible a MAPFRE. Ello, fundamentado en que no podía invocar una inmunidad gubernamental para evitar su obligación bajo el contrato de seguro.

Concluyó que la aseguradora no podía escudarse en la inmunidad del asegurado, cuando se relacionaba a acciones separadas y permitidas por ley, que tenían como propósito la protección de los perjudicados. Por lo cual, declaró que MAPFRE

---

[4] *Íd.*, Entrada Núm. 25 en SUMAC.
[5] *Íd.*, Entrada Núm. 26 en SUMAC.

continuaría como demandada, conforme a los límites y condiciones de la póliza correspondiente.

Insatisfecha, el 7 de enero de 2026, MAPFRE solicitó reconsideración de la determinación anterior.[6] En resumen, esgrimió que, debido a la inexistencia de una causa de acción contra el Municipio, tampoco la existía contra la aseguradora. Adujo que la intención de la Asamblea Legislativa al otorgarle inmunidad a los municipios ante este tipo de situaciones fue salvaguardar completamente la situación económica de los municipios, lo cual incluía los gastos por concepto de primas de pólizas de seguros de responsabilidad pública.

Asimismo, MAPFRE sostuvo que al no existir controversia en cuanto a que la acera era estatal y no existir una póliza de seguros a favor del ELA como titular, no tiene obligación de responderle a la señora San Inocencio Rodríguez. Por lo cual, señaló que lo procedente era desestimar el reclamo en su contra, debido a la ausencia de responsabilidad legal de su asegurado.

Por su parte, el 23 de enero de 2026, la parte apelada presentó su *Oposición a Moción de Reconsideración.*[7] Esencialmente, reiteró los planteamientos esbozados en su escrito en oposición a la solicitud de desestimación y/o sentencia sumaria. Ese mismo día, el TPI emitió una *Resolución* mediante la cual declaró No Ha Lugar la reconsideración.[8] Aún inconforme, el 20 de febrero de 2026, MAPFRE presentó su recurso de apelación, en el que señaló que el TPI incurrió en los siguientes errores:

> **PRIMER ERROR:** ERRÓ EL TPI AL DETERMINAR QUE MAPFRE DEBE PERMANECER EN EL PLEITO MEDIANTE ACCIÓN DIRECTA A PESAR DE HABERSE DECRETADO LA INEXISTENCIA DE UNA CAUSA DE ACCIÓN CONTRA SU ASEGURADO, APLICANDO INCORRECTAMENTE LAS DISPOSICIONES DEL CÓDIGO DE SEGUROS.

---

[6] *Íd.*, Entrada Núm. 27 en SUMAC.
[7] *Íd.*, Entrada Núm. 29 en SUMAC.
[8] *Íd.*, Entrada Núm. 30 en SUMAC.

**SEGUNDO ERROR:** ERRÓ EL TPI AL DETERMINAR QUE NO PROCEDE EXTENDER LA INMUNIDAD DEL MUNICIPIO COMO DEFENSA EN LA ACCIÓN DIRECTA CONTRA LA ASEGURADORA, A PESAR DE LA AUSENCIA CLARA DE RESPONSABILIDAD LEGAL DE SU ASEGURADO.

En síntesis, el apelante señaló que el foro apelado incidió al determinar que MAPFRE, como aseguradora, respondía en virtud de una póliza expedida a favor del Municipio por un accidente ocurrido en una acera estatal y, por la cual, su asegurado no venía legalmente obligado a responder. Al respecto, argumentó que, ante la ausencia de una causa de acción en contra de su asegurado, no procedía que respondiera como aseguradora. Puesto que la responsabilidad de indemnizar de una aseguradora nacía una vez se determinara que su asegurado era responsable por los daños reclamados.

Asimismo, sostuvo que no existía controversia en cuanto a que el Municipio no tenía jurisdicción, control y mantenimiento sobre la PR-25 ni sobre las aceras adyacentes, lugar donde se alegó que ocurrieron los hechos del pleito. También, adujo que, siendo incuestionable la ausencia de obligación municipal, el TPI debió desestimar igualmente la reclamación en su contra, puesto que la inexistencia de responsabilidad del asegurado excluía cualquier obligación de su aseguradora. Explicó que esta interpretación armonizaba la intención legislativa de proteger a los municipios de reclamaciones por accidentes en las vías estatales y evitar un aumento en las primas que afectara la estabilidad fiscal de los municipios. Finalmente, precisó que la prohibición de invocar la inmunidad como defensa, tal como disponía el Artículo 20.050 del Código de Seguros, *supra*, sec. 2004, se refería a los límites de responsabilidad del ELA, no a la ausencia de una causa de acción. Expresó que podía invocar la inmunidad prevista en el Artículo 1.053 del Código Municipal, *supra*, sec. 7084, por no tratarse de una defensa privativa, sino de la inexistencia de responsabilidad legal y

causa de acción contra el asegurado. Por ello, alegó que la acción en su contra debía desestimarse.

Por su parte el, 23 de marzo de 2026 la señora San Inocencio Rodríguez presentó su *Alegato en Oposición a Apelación Civil.*[9] Primeramente, expresó, que debido a que el asunto era interlocutorio, el apelante debió presentar un recurso de *certiorari* y no una apelación.[10] En cuanto a los errores que MAPFRE imputó al TPI, indicó que no fueron cometidos. Sostuvo que la acera donde ocurrió la caída era municipal, a base de la *Ley de travesías*, Ley Núm. 49 de 1 de diciembre de 1917, 9 LPRA sec. 12 *et seq.* Señaló que, según esta ley, aunque la carretera PR-25 era estatal, las aceras adyacentes a esta eran municipales. Indicó que, por consiguiente, el Municipio tenía la jurisdicción, control y el deber de dar mantenimiento a las aceras.

Asimismo, señaló que, aunque el TPI le reconoció inmunidad estatutaria al Municipio, esta no era extensible a MAPFRE. Arguyó que la intención legislativa al conceder la inmunidad a los municipios fue que estos no fueran responsables de la negligencia del ELA. Pues, la Legislatura entendió que era necesario proteger a los municipios contra acciones por daños y perjuicios por alegados daños ocurridos en propiedad estatal. Ello, al considerar que tales acciones

---

[9] Entrada Núm. 3 en SUMAC TA.

[10] La Regla 42.3 de Procedimiento Civil, *supra*, R. 42.3, dispone que una sentencia parcial final es aquella que, al resolverse el juzgador le atribuye carácter de finalidad. Ello implica concurren dos requisitos, a saber: (1) que el juzgador expresó clara e inequívocamente que no existe razón para posponer la resolución de esta reclamación hasta la adjudicación total del pleito, y (2) que ordenó expresamente que se registre y se notifique esa sentencia. *Rosario y otros v. Hospital Gen. Menonita, Inc.,* 155 DPR 49, 57 (2001). Si una sentencia parcial adolece del referido lenguaje, requerido por la Regla 42.3 de Procedimiento Civil, *supra*, la misma no advendrá final y es, más bien, una resolución interlocutoria que podrá revisarse solo mediante recurso de *certiorari,* si así lo permite la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, o mediante recurso de apelación cuando, eventualmente, recaiga una sentencia apelable en el caso. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, (2008); *García v. Padró,* 165 DPR 324, 333-334 (2005). En el presente caso, el TPI cumplió con los requisitos previamente expuestos cuando emitió la *Sentencia Parcial,* de la cual se solicita revisión. Por tanto, al tratarse de una sentencia parcial final, el mecanismo adecuado para la resolución del caso de marras es la *Apelación,* y así la acogemos, aunque ciertamente, para efectos de MAPFRE, la determinación apelada constituía una determinación interlocutoria, debido a su permanencia en el pleito. En cualquier caso, precisamos que este aspecto procesal no incide en el resultado sustantivo del caso.

impactaban la precaria situación fiscal de los municipios y provocaban un aumento sustancial en los costos de los seguros de responsabilidad pública. Por ello, adujo que el estatuto pretendía limitar las demandas contra los municipios, no que se les eximiera de responsabilidad ni que implicara ausencia de causa de acción contra el Municipio. Por lo cual reiteró que no podía extenderse tal protección a MAPFRE.

Cónsono a lo anterior, arguyó que la *Demanda* se entabló directamente contra la aseguradora bajo el Artículo 20.030 del Código de Seguros, *supra,* sec. 2003. Alegó que la póliza obligaba a MAPFRE a responder, ya que estaba en disputa la responsabilidad del Municipio. Sostuvo que aun cuando el Municipio gozara de inmunidad estatutaria, por virtud del Código Municipal, *supra,* ello no implica la inexistencia de responsabilidad, por lo que el tribunal venía obligado a establecer la responsabilidad de este. Además, señaló que, según el Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.,* las aseguradoras estaban privadas de ampararse en las inmunidades gubernamentales de su asegurado. En específico, arguyó que, en las acciones directas contra las aseguradoras, estas no podían levantar defensas basadas en la protección de la inmunidad familiar u otras reconocidas en Puerto Rico. La señora San Inocencio Rodríguez entendió que el Municipio era el responsable del mantenimiento de las aceras por tenerlas bajo su control y jurisdicción. Por ello, sostuvo que la póliza expedida por MAPFRE cubría los daños reclamados, por lo que podía reclamarle directamente hasta los límites de la póliza, sin importar que el Municipio gozara de inmunidad.

Por su parte, el 24 de marzo de 2026, el ELA presentó el *Alegato del Estado.*[11] Mediante su escrito, solicitó que se confirmara el

---

[11] Entrada Núm. 4 en SUMAC TA.

dictamen apelado por entender que la inmunidad del Municipio no se extendió a MAPFRE. Ello, fundamentado en que la inmunidad que concedía el Código Municipal, *supra*, no implicaba falta de responsabilidad. Sostuvo que la intención legislativa fue liberar a los municipios de cualquier responsabilidad sobre las carreteras y aceras estatales de las cuales no tenía a su cargo la reparación ni el mantenimiento. Arguyó que la PR-25 era una travesía de la cual el Municipio poseía el control y jurisdicción sobre las aceras. Ante lo cual, sostuvo que el Municipio tenía el deber de conservarlas y darles mantenimiento. Por lo cual, adujo que tal inmunidad no podía extenderse a las aseguradoras.

Arguyó que, pese a que el Municipio tenía inmunidad estatutaria, MAPFRE debía permanecer en el litigio para responder conforme a la póliza de responsabilidad.

**II.**

**A. Desestimación**

La Regla 10.2 de Procedimiento Civil, *supra*, R. 10.2, dispone los fundamentos que permiten la desestimación de una demanda, entre ellos dejar de exponer una reclamación que justifique la concesión de un remedio. *Saint Mary Investments, LLC. v. Denton Morales et* als, 2026 TSPR 35, 218 DPR ___. Al considerar una moción de desestimación al amparo de esta regla, el tribunal debe interpretar las alegaciones de la manera más liberal posible a favor de la parte demandante. *Íd.*, *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428-429 (2008). En este sentido, el tribunal tomará como ciertos todos los hechos bien alegados en la demanda, expuestos de manera clara y concluyente, siempre que de su faz no den margen a dudas. *Íd.*, pág. 428; Véase también *Blassino Alvarado y otro v. Reyes Blassino y otro*, 214 DPR 823 (2024); *Costas Elena y otros v. Magic Sport y otros*, 213 DPR 523 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384 (2022); *López García v. López García,*

200 DPR 50, 69 (2018); *Pressure Vessels PR v. Empire Gas PR*, 137 DPR 497, 505 (1994). Así, la desestimación se dirige a los méritos de la controversia y no al trámite procesal. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 83 (2023); *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021); *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 104 (2002).

Luego, el tribunal debe determinar si, a base de los hechos bien alegados en la demanda, existe una reclamación plausible que justifique un remedio, a la luz de la experiencia y el sentido común. *Íd.* Si no se cumple con el estándar de plausibilidad, procede desestimar la demanda, pues no se puede sostener una reclamación insuficiente bajo el pretexto de que las alegaciones conclusorias se probarán en el descubrimiento de prueba. *Íd.* Pues, si bien una demanda sólo requiere una relación sucinta y sencilla de los hechos demostrativo de que la parte demandante tiene derecho a un remedio, no se presumen como ciertas las conclusiones legales ni los elementos de la causa de acción basados en aseveraciones conclusorias. Regla 6.1 de Procedimiento Civil, *supra*, R. 6.1.; R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Lexis Nexis, 2017, pág. 307.

Ahora bien, la demanda no debe desestimarse, excepto que se demuestre que la parte demandante no tiene derecho a remedio alguno, bajo cualesquiera hechos que pueda probar en apoyo a su reclamación. *Costas Elena y otros v. Magic Sport y otros*, *supra*; *Eagle Security v. Efrón Dorado et al.*, *supra*, pág. 84; *López García v. López García*, *supra*, pág. 70; *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, *supra*, pág. 429. Igualmente, la demanda no debe ser desestimada si es susceptible de ser enmendada. *Íd.*

**B. Conservación y mantenimiento de las carreteras y aceras estatales**

En virtud de la *Ley de Travesías, supra,* el DTOP tenía a su cargo la conservación y el mantenimiento de las carreteras estatales, conocidas como estaduales,[12] que atravesaban las zonas urbanas. Dicho estatuto disponía que los municipios tenían jurisdicción sobre las dos (2) zonas urbanizadas a ambos lados de la travesía, con facultad de fijar alineaciones para la construcción de edificios y aceras conforme las ordenanzas municipales. Véase Art. 2 de la *Ley de Travesías, supra,* sec. 13. El Tribunal Supremo interpretó esta disposición en el sentido de que los municipios eran responsables de tomar medidas necesarias para conservar y mantener las aceras y prevenir daños por situaciones peligrosas. *Pérez v. Mun. de Lares,* 155 DPR 697 (2001) (*Per Curiam*); *Oliver v. Municipio de Bayamón,* 89 DPR 442 (1963); *Vélez v. Gobierno de La Capital,* 77 DPR 701 (1954).

No obstante, la Asamblea Legislativa consideró que las acciones en daños y perjuicios contra los municipios menoscabarían los servicios y recursos municipales, encarecerían los seguros de responsabilidad y generarían costos de litigación insostenibles. Para atender esta preocupación, determinó que era "necesario establecer un régimen legal justo **para que los municipios no sean responsables por la alegada negligencia al Estado, en cuanto al mantenimiento de sus carreteras y aceras**" (Énfasis nuestro). A dichos fines, se aprobó la Ley Núm. 143-2019, que añadió el inciso

---

[12] Conforme a la *Ley de Administración, Conservación y Policía de las Carreteras Estatales de Puerto Rico,* Ley Núm. 54 de 30 de mayo de 1973, según enmendada, 9 LPRA sec. 2102, la carretera se define como:

> [C]ualquier vía pública estatal para el tránsito vehicular que haya sido construida de acuerdo a alguna Ley del Estado Libre Asociado de Puerto Rico o que, habiendo sido construida por una Agencia o Corporación Pública, Estatal o Federal o por un municipio, haya sido transferida legalmente al Departamento de Transportación y Obras Públicas para su custodia y conservación. Una carretera está integrada por la zona de rodaje, el paseo, la servidumbre de paso, así como puentes, obras de desagüe, rótulos, señales, barreras protectoras, necesarias y convenientes para el mejor tránsito de los vehículos.

(g) al Artículo 15.005 de la derogada *Ley de Municipios Autónomos de Puerto Rico,* Ley Núm. 81-1991, según enmendada, 21 LPRA sec. 4705; véase *González Meléndez v. Mun. San Juan et al., supra.* Tal enmienda prohibió expresamente las reclamaciones en daños y perjuicios contra los municipios por accidentes ocurridos en las carreteras o aceras estatales. *Íd.*

Dicha disposición se mantuvo vigente en el Artículo 1.053 del Código Municipal, *supra,* sec. 7084, el cual reiteró que no estaban autorizadas las acciones contra los municipios por daños y perjuicios por acto u omisión de un funcionario, agente o empleado municipal cuando ocurrían accidentes en una carretera o acera estatal. En tales casos, el reclamante no tiene causa de acción contra un municipio. *González Meléndez v. Mun. San Juan et al., supra*, pág. 621.

### C. Seguros

Una persona que sufra daños por las acciones u omisiones culposas o negligentes de un asegurado puede orientar su causa de acción de tres (3) formas: contra el asegurador, contra el asegurado, o contra ambos. *Negrón Castro et al. v. SLG et al.,* 2025 TSPR 96, 216 DPR ___; *SLG Albert-García v. Integrand Asrn.*, 196 DPR 382 (2016); *Neptune Packing Corp., v. Wackenhut Corp.,* 120 DPR 283 (1988). Sin embargo, el Artículo 20.030 del Código de Seguros, *supra,* sec. 2003, limita la acción directa contra el asegurador a que su responsabilidad no excederá aquella dispuesta en los términos de la póliza. *Negrón Castro et al. v. SLG et al., supra; Albert-García v. Integrand Asrn., supra*; *Savary et al. v. Mun. Fajardo et al.,* 198 DPR 1014 (2017).

A su vez, el Artículo 20.050 del Código de Seguros, *supra,* sec. 2004, dispone lo siguiente respecto al seguro de responsabilidad sobre entidades públicas:

> (1) La obtención de un seguro de responsabilidad por el Estado Libre Asociado de Puerto Rico, sus dependencias o entidades, y por los municipios y otras subdivisiones políticas, no constituirá ni se estimará que constituye una renuncia de inmunidad gubernamental, si la hubiere, en la

responsabilidad por actos u omisiones en que hubiera mediado culpa o negligencia por agentes o empleados públicos, excepto hasta el grado de la indemnización cobrable real y efectivamente provista por dicho seguro en cuanto a un suceso en particular. Sin embargo, no se considerará que existe tal renuncia de inmunidad en cuanto a ninguna reclamación o demanda contra tal entidad pública, a menos que dicha entidad renuncie expresamente a la inmunidad.

(2) Todas dichas pólizas de seguro deberán disponer que el asegurador no podrá aducir la defensa de inmunidad gubernamental en ninguna acción incoada contra el asegurador con arreglo a dicha póliza en virtud de la misma. [...]

Es decir, la aseguradora no puede ampararse en la inmunidad que cobija al municipio asegurado. *Insurance Co. of PR v. Tribunal Superior*, 100 DPR 405 (1972). Ahora bien, aunque el asegurador no pueda invocar las defensas personales o privativas del asegurado, no responde si este no incurrió en culpa o negligencia. *Albert-García v. Integrand Asrn.*, *supra*. En efecto, "según el historial legislativo [del Código de Seguros, *supra*] no procede una interpretación que pretenda imputar responsabilidad absoluta al asegurador aún en ausencia de negligencia o culpa del asegurado".[13] *Íd.*

### III.

En el presente caso, MAPFRE planteó que el TPI erró al no desestimar la causa de acción en su contra, luego de que se decretó la inexistencia de titularidad del Municipio y ante la inmunidad concedida por el Código Municipal, *supra*. Tras una lectura sosegada de los planteamientos de las partes y de los documentos obrantes en autos a tenor con la normativa jurídica aplicable, concluimos que le asiste la razón a la apelante.

En primer lugar, el accidente ocurrió en una acera colindante a la carretera PR-25, una vía estatal con una servidumbre de paso del DTOP y del ELA. Conforme al Artículo 1.053(g) del Código Municipal, *supra*, sec. 7084, los municipios gozan de inmunidad

---

[13] En el *Informe Positivo sobre el Proyecto de la Cámara 3637 del 22 de octubre de 2007*, la Comisión de lo Jurídico, Asuntos Municipales y Financieros precisó que, tras la enmienda entonces propuesta y, en efecto, aprobada, al Código de Seguros, *supra*, se aclaró que el asegurador no responde en daños por su asegurado, a menos que éste sea responsable por los daños causados.

frente a reclamaciones de daños y perjuicios por accidentes ocurridos en carreteras y aceras estatales. Por lo tanto, la acción incoada contra el Municipio carece, conforme al estado de derecho vigente, de amparo jurídico, pues el ordenamiento expresamente prohíbe reclamar indemnización contra los municipios por hechos ocurridos en estos lugares.

En cuanto a la responsabilidad de MAPFRE si bien es cierto que, en virtud del Artículo 20.050 del Código de Seguros, *supra*, sec. 2004, la aseguradora no puede invocar la defensa de inmunidad del Municipio, ello no implica que deba responder cuando no existe causa de acción contra su asegurado. Es norma trillada que la aseguradora sólo responde en la medida en que exista responsabilidad jurídica del asegurado. Véase *Albert-García v. Integrand Asrn.*, supra. Dicho de otro modo, la póliza no transforma al asegurador en garante absoluto de cualquier reclamación, sino que condiciona su obligación a que medie una conducta culposa o negligente imputable al asegurado dentro del marco de cobertura.

En este caso, la inexistencia de responsabilidad del Municipio por razón de la inmunidad descarta cualquier obligación de MAPFRE de responder por el mero hecho de ser el asegurador del Municipio. Esto porque, según nuestro más alto foro ha expresado, el contrato de seguros no puede extenderse para cumplir con responsabilidades que no tiene el asegurado. *Admor. FSE v. Flores Hnos. Cement Prods.*, 107 DPR 789, 797 (1978). Sostener lo contrario equivaldría a desnaturalizar la finalidad del seguro de responsabilidad pública, imponiendo a la aseguradora un riesgo absoluto, ajeno a la conducta del asegurado, interpretación que ha sido expresamente rechazada en nuestro ordenamiento jurídico.

En consecuencia, el TPI erró al no desestimar la causa de acción contra la aseguradora del Municipio, MAPFRE. Por todo lo expuesto, procede modificar la determinación del foro primario.

**IV.**

Por los fundamentos que anteceden, se modifica la *Sentencia Parcial* apelada a fines de desestimar la demanda en cuanto a MAPFRE. Se devuelve el caso al TPI para la continuación de los procedimientos, de conformidad con lo aquí resuelto.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones