Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| COOPERATIVA DE AHORRO Y CRÉDITO NAGUABEÑA<br><br>*Peticionario*<br><br>v.<br><br>IVÁN VERA CARABALLO Y OTROS<br><br>*Recurrido* | TA2026CE00276 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: HU2020CV00952<br><br>Sobre: Cobro de Dinero-Ordinario |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de abril de 2026.

Comparece ante nos el señor Iván Vera Caraballo (señor Vera Caraballo), el señor Manuel Orlando Torres Rivera (señor Torres Rivera) e IM Properties, Inc. (IM Properties) (en conjunto, peticionarios) mediante recurso de *Certiorari* y solicitan que revoquemos la *Resolución Interlocutoria*[1] emitida el 2 de febrero de 2026[2], por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro recurrido). Mediante el referido dictamen, el TPI declaró *No Ha Lugar* la *Moción de Reconsideración*[3] referente a una *Resolución Interlocutoria*[4] en la cual el TPI determinó no dejar a los peticionarios presentar la reconvención.

Por los fundamentos que expondremos a continuación, **expedimos** el recurso de epígrafe y **revocamos** la *Resolución Interlocutoria* recurrida.

---

[1] Apéndice 177 del recurso de *Certiorari.*
[2] Notificada el 3 de febrero de 2026.
[3] Apéndice 173 del recurso de *Certiorari.*
[4] Apéndice 169 del recurso de *Certiorari.*

**I.**

El caso de autos tuvo su génesis el 6 de octubre de 2020 cuando la Cooperativa de Ahorro y Crédito Naguabeña (Cooperativa o recurrida) instó una *Demanda*[5] por cobro de dinero, incumplimiento de contrato, fraude, dolo, ejecución de hipoteca y prenda en contra de los peticionarios. En esta, la recurrida adujo que los peticionarios suscribieron un contrato de préstamo el 17 de agosto de 2015, mediante el cual se les concedió una línea de crédito por la cantidad de un millón ($1,000,000.00) de dólares, más los intereses a razón de cinco punto noventa y cinco por ciento (5.95%) anual sobre el balance adeudado. Surge de las alegaciones que los peticionarios adquirieron catorce (14) inmuebles desde el 2 de diciembre de 2015 y hasta mediados del año 2018. De esos catorce (14) inmuebles, el notario David E. Vera Umpierre (notario Vera Umpierre) otorgó ocho (8) escrituras de constitución de hipoteca a favor de la Cooperativa, de las cuales, solo presentó al Registro de la Propiedad la Escritura Núm. ciento dieciséis (116) del 2 de diciembre de 2015. Sin embargo, los peticionarios tomaron la determinación de no presentar las restantes siete (7) transacciones ante el Registro de la Propiedad. La Cooperativa confió en que las escrituras otorgadas serían presentadas en el Registro de la Propiedad, como fue acordado. Así pues, desembolsó a favor de los peticionarios la cantidad de un millón doce mil seiscientos cincuenta y dos dólares con ochenta y dos centavos ($1,012,652.82). Dicho esquema, llevó a la Cooperativa a incurrir en pérdidas que ascienden a la suma de novecientos ochenta y cinco mil ciento treinta y tres dólares con cincuenta y nueve centavos ($985,133.59).

Tras varios incidentes procesales, el 23 de junio de 2021, los peticionarios sometieron su *Contestación a la Demanda, Defensas*

---

[5] Apéndice 1 del recurso de *Certiorari*.

*Afirmativas y Reconvención*[6]. Estos reconvinieron por la suma de quinientos mil dólares ($500,000.00) por concepto de daños y perjuicios causados a su reputación tras hacerse pública las alegaciones difamatorias y libelosas a terceros y solicitaron honorarios por temeridad por la suma de veinte mil dólares ($20,000.00) más las costas y gastos. Además, ese mismo día, presentaron una *Moción de Desestimación por Falta de una Parte Indispensable*[7]. Allí esbozaron que, según se desprendía de las alegaciones de la *Demanda*, el notario Vera Umpierre también formó parte del esquema de fraude y que, por ende, éste era parte indispensable en el pleito.

Por su parte, el 6 de julio de 2021, la recurrida presentó *Contestación a la Reconvención*[8] en la cual argumentó que los daños alegadamente sufridos por los peticionarios eran producto de sus acciones, por los cuales ésta no respondía.

Transcurridos algunos días, el 15 de julio de 2021, la Cooperativa instó una *Moción en Cumplimiento de Orden y Solicitando Autorización para Enmendar Demanda*[9] junto a la *Demanda Enmendada*[10] a los únicos efectos de incluir al notario Vera Umpierre.

Evaluados los escritos de las partes, en igual fecha, el foro recurrido emitió y notificó una *Orden*[11] en la cual le permitió a la recurrida enmendar la *Demanda*. Asimismo, mediante *Resolución*[12], declaró *No Ha Lugar* la solicitud de desestimación presentada por los peticionarios.

Al cabo de varios años y tras desestimarse la *Demanda* en contra del notario Vera Umpierre, el 17 de diciembre de 2025, la

---

[6] Apéndice 38 del recurso de *Certiorari*.
[7] Apéndice 39 del recurso de *Certiorari*.
[8] Entrada núm. 42 del expediente del Tribunal de Primera Instancia (TPI).
[9] Apéndice 44 del recurso de *Certiorari*.
[10] *Íd.*, Anejo *Demanda Enmendada*.
[11] Apéndice 45 del recurso de *Certiorari*.
[12] Apéndice 46 del recurso de *Certiorari*.

Cooperativa presentó una *Moción en Solicitud de Rebeldía*[13]. En la misma, solicitó que se les anotara la rebeldía a los peticionarios, toda vez que no habían contestado la *Demanda Enmendada*. En vista de lo anterior, el 18 de diciembre de 2025, el foro recurrido emitió y notificó una *Orden*[14] en la que concedió a los peticionarios un término de diez (10) días para presentar su contestación a la *Demanda Enmendada*.

Tras el TPI otorgarles a los peticionarios un término adicional de cinco (5) días[15], el 13 de enero de 2026, estos sometieron su *Contestación a la Demanda Enmendada, Defensas Afirmativas y Reconvención*[16].

El 14 de enero de 2026[17], el foro recurrido emitió una *Resolución Interlocutoria* en la cual declaró *No Ha Lugar* la presentación de la reconvención de los peticionarios. Inconformes, el 30 de enero de 2026, los peticionarios presentaron una *Moción de Reconsideración*. Allí argumentaron que la reconvención que se incluyó en la *Contestación a la Demanda Enmendada*, en esencia, era la misma que fue incluida en la contestación a la *Demanda* original. Puntualizaron que lo único que se le añadió fue el inciso diez (10), esto, debido a documentos obtenidos por la Cooperativa el 20 de noviembre de 2025, mediante los cuales advinieron en conocimiento de que a quien se le desembolsó la línea de crédito, quien otorgó escrituras e hizo la compra y venta de las propiedades, fue IM Properties, Inc.

Examinada tal solicitud, el 2 de febrero de 2026[18], el TPI emitió una *Resolución Interlocutoria* en la cual declaró *No Ha Lugar* la reconsideración de los peticionarios. Insatisfechos aun, el 5 de

---

[13] Apéndice 157 del recurso de *Certiorari*.
[14] Apéndice 159 del recurso de *Certiorari*.
[15] Apéndice 164 del recurso de *Certiorari*.
[16] Apéndice 165 del recurso de *Certiorari*.
[17] Notificada el 15 de enero de 2026.
[18] Notificada el 3 de febrero de 2026.

marzo de 2026, acudieron a este foro intermedio y le imputaron al foro recurrido los siguientes señalamientos de error:

> PRIMER ERROR: Al no permitir la reconvención presentada por la parte peticionaria en la Contestación a la Demanda Enmendada, a pesar de que dicha reconvención había sido previamente presentada oportunamente en la Contestación a la Demanda original.

> SEGUNDO ERROR: Al interpretar restrictivamente las Reglas de Procedimiento Civil e impedir la adjudicación conjunta de reclamaciones que surgen del mismo núcleo de hechos del pleito.

> TERCER ERROR: Al incurrir en abuso de discreción al eliminar o rechazar una reclamación procesal válida previamente presentada conforme a derecho.

El 6 de marzo de 2026[19], emitimos una *Resolución* concediéndole a la recurrida hasta el 16 de marzo de 2026 para que se expresara en cuanto al recurso presentado. Luego de solicitar una prórroga, el 20 de marzo de 2026, la Cooperativa sometió su *Oposición a Recurso de Certiorari*. Allí arguyó que la nueva reconvención incluía alegaciones sustancialmente nuevas y tardías. Es por lo anterior que, la recurrida adujo que permitir la reconvención causaría un perjuicio sustancial, pues obligaría a reabrir el descubrimiento de prueba, alteraría la estrategia litigiosa ya estructurada y retrasaría indebidamente la adjudicación del caso.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

El auto de *certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[20] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones[21]. Nuestro

---

[19] Notificada el 9 de marzo de 2026.
[20] 32 LPRA Ap. V, R. 52.1.
[21] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, pág. 63, 216 DPR __ (2025).

ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[22]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo[23].

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[24]. No obstante, la Regla 52.1 de Procedimiento Civil, *supra*, faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión[25].
> [...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, para dirigir la activación de nuestra

---

[22] *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994).
[23] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[24] *García v. Padró*, 165 DPR 324, 334-335 (2005*); Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 180 (1992).
[25] 32 LPRA Ap. V, R. 52.1.

jurisdicción discrecional en estos recursos dispone que para expedir un auto de *certiorari,* este Tribunal debe tomar en consideración los siguientes criterios:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido. Es decir, el ordenamiento impone que ejerzamos nuestra discreción y evaluemos si, a la luz de alguno de los criterios contenidos en la misma, se requiere nuestra intervención.

**-B-**

Las Reglas de Procedimiento Civil se interpretarán de modo que faciliten el acceso a los tribunales y el manejo del proceso, de forma que garanticen una solución justa, rápida y económica de todo procedimiento[26]. Por ello, para fomentar la economía procesal se han establecido disposiciones que regulan el manejo de los casos que se dilucidan en los foros judiciales.

En lo que nos concierne, la Regla 5.1 de las de Procedimiento Civil[27], dicta que "**las alegaciones permitidas** serán la demanda, **la**

---

[26] 32 LPRA Ap. V, R. 1. *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 595 (2011).
[27] 32 LPRA Ap. V, R. 5.1.

**reconvención**, la demanda contra coparte, la demanda contra tercero y sus respectivas contestaciones". (Énfasis nuestro).

"Una parte puede presentar una reclamación contra una parte adversa a través del mecanismo de la reconvención"[28]. La Regla 11.3 de las de Procedimiento Civil[29], define el alcance de esta herramienta y dispone que:

> Una reconvención puede disminuir o derrotar la reclamación de la parte adversa y también puede reclamar un remedio por cantidad mayor o de naturaleza diferente al solicitado en la alegación de la parte adversa.

"El propósito de esta regla es evitar la multiplicidad de litigios al crear un mecanismo en el que se diluciden todas las controversias comunes en una sola acción"[30].

Nuestro ordenamiento procesal reconoce dos (2) tipos de reconvenciones: las permisibles y las compulsorias. La distinción entre ambas es medular, puesto la omisión de presentar una reconvención compulsoria podría ser fatal. La Regla 11.1 de las de Procedimiento Civil[31], define las reconvenciones compulsorias como aquellas que surgen "del acto, de la omisión o del evento que motivó la reclamación de la parte adversa y no requiera para su adjudicación la presencia de terceros sobre quienes el tribunal no pueda adquirir jurisdicción". **<u>Éstas deberán ser presentadas al momento en el que la parte que reconviene notifique su alegación.</u>**

**Nuestro Tribunal Supremo ha resuelto que, las reconvenciones compulsorias, de no formularse al momento de notificar su alegación, se tendrán por renunciadas las causas de acción que la motivan**[32]. (Énfasis nuestro). Dicho de otra manera, en aquellos casos en que no se formulen oportunamente las

---

[28] *S.L.G. Font Bardón v. Mini-Warehouse,* 179 DPR 322, 332 (2010).
[29] 32 LPRA Ap. V, R. 11.3.
[30] *S.L.G. Font Bardón v. Mini-Warehouse, supra,* pág. 333; *Neca Mortg. Corp. v. A&W Dev. S.E.,* 137 DPR 860, 867 (1995).
[31] 32 LPRA Ap. V, R. 11.1.
[32] *Neca Mortg. Corp. v. A&W Dev. S.E., supra,* pág. 867.

reconvenciones compulsorias, se considerarán adjudicados la totalidad de los hechos y reclamaciones, sin que el demandado pueda presentar posteriormente una reclamación que haya surgido de los mismos eventos"[33].

Por otro lado, en el caso de *Consejo Titulares v. Gómez Estremera et al.*, 184 DPR 407, 424–425 (2012), nuestro más Alto foro resolvió que el criterio rector para determinar que estamos ante una reconvención compulsoria lo será,

> (1) "si existe una relación lógica entre la reclamación presentada en la demanda y la que es objeto de la reconvención"; (2) "*cu[a]ndo los hechos esenciales de ambas reclamaciones están tan vinculados que la economía judicial exige que se ventilen en conjunto*"; (3) "[s]i las cuestiones de hecho y de derecho entre ambas son las mismas"; (4) "si la doctrina de *res judicata* impediría una acción independiente", y (5) "si ambas reclamaciones surgen de la misma prueba y están vinculadas lógicamente"[34].

En cuyo caso aplicará "por analogía, el principio de la cosa juzgada, [siendo concluyente con] relación a aquellos asuntos que pudieron haber sido planteados y no lo fueron"[35]. La doctrina de *res judicata* impide una reclamación posterior que debió presentarse como reconvención compulsoria en una acción anterior. Ello es así, porque las reconvenciones compulsorias envuelven controversias y partes sustancialmente idénticas a las de la reclamación primaria[36].

Añade el tratadista Cuevas Segarra en su escrito, que:

> La reconvención contra el demandante debe ser en la misma capacidad en la cual el demandante demandó al demandado. Los actos realizados por una misma persona en dos diferentes capacidades deben generalmente ser consideradas "as the transactions of two diferent legal personages". El concepto de "Legal Personage" es un medio práctico para identificar el interés real en juego en la demanda[37].

---

[33] *Íd.*

[34] R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil*, 4ta ed., San Juan, Ed. LexisNexis de Puerto Rico, 2007, pág. 218.

[35] *Consejo Titulares v. Gómez Estremera et al.*, *supra*, la pág. 425; *Sastre v. Cabrera*, 75 DPR 1, 3 (1953); J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2ª ed., Publicaciones JTS, 2011, T. II, pág. 558.

[36] J. A. Cuevas Segarra, *op. cit.* pág. 563.

[37] J. A. Cuevas Segarra, *op. cit.* la pág. 559.

Según esbozado, si bien es cierto que nuestro ordenamiento procesal exige la presentación de la reconvención compulsoria al momento de contestar la demanda, salvadas excepciones permiten presentarla posteriormente. Cónsono con lo anterior, nuestro Máximo Foro ha expresado que:

> En primer término, se puede presentar una reconvención compulsoria a través de una alegación suplementaria. Regla 11.5 de Procedimiento Civil de Puerto Rico. Este mecanismo se utiliza cuando es con relación a una reclamación cuya exigibilidad advenga luego de que dicha parte haya notificado su contestación a la demanda. El objetivo de esta regla es poner al día el litigio, añadiendo alegaciones sobre hechos que hayan surgido "con posterioridad a la alegación que se pretende suplementar".
>
> Otra de las instancias en las que una parte puede presentar una reconvención compulsoria es a través de una solicitud de enmienda a su alegación. Regla 11.6 de Procedimiento Civil. Se reconoce esta excepción en aquellos casos en los que una parte deje de formular una reconvención en su contestación a la demanda por descuido, inadvertencia o negligencia excusable, o cuando así lo requiera la justicia[38].

El poder que tienen los Tribunales para conceder los remedios de suplementar o enmendar alegaciones, para incluir la reconvención, está revestido de discreción, y sólo será modificado en casos que se demuestre abuso de ésta. El Tribunal Supremo analizó estos requisitos, para guiar la discreción de los tribunales.

> A pesar de que los Tribunales pueden conceder las enmiendas de forma liberal, esta liberalidad no es infinita. Al momento de permitir una enmienda a las alegaciones se deben ponderar los factores siguientes: "(1) el impacto del tiempo transcurrido previo a la enmienda, (2) la razón de la demora, (3) el perjuicio a la otra parte, y (4) la procedencia de la enmienda solicitada"[39].

### III.

Antes de atender la controversia que nos ocupa, nos compete evaluar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Así pues, tras examinar el expediente ante nuestra consideración y a la luz de los criterios de la Regla 40 del

---

[38] *SLG Font Bardón v. Mini-Warehouse,* 179 DPR 322, 333-334 (2010).
[39] *Íd.,* pág. 334.

Tribunal de Apelaciones, *supra,* determinamos expedir el auto solicitado y revocar el dictamen recurrido. Veamos.

En apretada síntesis, los peticionarios adujeron que el TPI incidió al rechazar una reconvención oportunamente presentada, al interpretar restrictivamente las Reglas de Procedimiento Civil e incurrir en abuso de discreción al impedir la adjudicación de reclamaciones relacionadas. Por estar íntimamente relacionados entre sí, discutiremos los señalamientos de error en conjunto.

En primer lugar, debemos puntualizar que la reconvención presentada por los peticionarios es una de carácter compulsorio, toda vez que surgió del mismo evento objeto de la *Demanda* original y de la *Demanda Enmendada.* Recordemos que, los peticionarios reconvinieron por concepto de daños y perjuicios causados a su reputación tras hacerse pública las alegaciones supuestamente difamatorias y libelosas cuando la Cooperativa los demandó por cobro de dinero, incumplimiento de contrato, fraude, dolo, ejecución de hipoteca y prenda. Es decir, la reconvención en controversia era de carácter compulsorio porque era el resultado de las propias alegaciones de la *Demanda* de la Cooperativa.

En segundo lugar, según adelantamos en la exposición del derecho, las reconvenciones compulsorias deben formularse cuando el que reconviene notifica su alegación, pues de no hacerlo se tendrán por renunciadas las causas de acción que la motivan[40]. En el caso de autos, el 6 de octubre de 2020, la recurrida instó la *Demanda,* mientras que, el 23 de junio de 2021, los peticionarios sometieron su *Contestación a la Demanda, Defensas Afirmativas y Reconvención*[41]. Por su parte, el 6 de julio de 2021, la Cooperativa presentó su *Contestación a la Reconvención.* Es decir, los peticionarios cumplieron con el estándar de formular su

---

[40] *Neca Mortg. Corp. v. A&W Dev. S.E., supra,* pág. 867.
[41] Apéndice 38 del recurso de *Certiorari.*

reconvención en la alegación responsiva. Por ende, somos de la opinión de que el TPI erró al no dejar a los peticionarios presentar la reconvención en la *Contestación a la Demanda Enmendada.*

Si bien los peticionarios añadieron el inciso diez (10) en la reconvención debido a unos documentos obtenidos por la Cooperativa el 20 de noviembre de 2025, mediante los cuales advinieron en conocimiento de que a quien se le desembolsó la línea de crédito, quien otorgó escrituras e hizo la compra y venta de las propiedades, fue IM Properties, Inc., en esencia, la reconvención no era una reclamación nueva. Al contrario, era una reclamación ya presentada oportunamente en la contestación a la *Demanda* original, por lo que su reiteración en la contestación a la *Demanda Enmendada* no requería autorización adicional del tribunal.

Como cuestión de umbral, consideramos imperativo resaltar el principio rector de nuestro ordenamiento procesal civil que promueve resolver las controversias de forma justa, rápida y económica[42]. Considerado lo antes esbozado, colegimos que el foro recurrido, al rechazar la reconvención, aplicó las reglas procesales de manera restrictiva e irrazonable, frustrando los objetivos de estas.

Finalmente, a la luz de lo antes expuesto, determinamos que el TPI abusó de su discreción, pues actuó arbitrariamente al aplicar las reglas procesales de forma restrictiva y formular un dictamen irrazonable contrario al derecho procesal aplicable.

### IV.

Por los fundamentos antes expuestos, ***expedimos*** el recurso de epígrafe y ***revocamos*** la *Resolución Interlocutoria* recurrida.

Notifíquese.

---

[42] 32 LPRA Ap. V, R. 1. *Rivera Figueroa v. Joe's European Shop, supra*, pág. 595.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones